

FILED
MAY 2 1 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

1  Kimberly R. Olson, In Pro Per
2  PO Box 243
   Hornbrook, CA 96044

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kimberly R. Olson,<br><br>    Plaintiff,<br><br>vs.<br><br>Judy Carter, Dawn Caveye, Siskiyou County Adult and Children's Services; and, John Does 1-20<br><br>    Defendants, | Case No: **2:21 - CV 929 JAM CKD PS**<br><br>**COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)**<br><br>ACTION AT LAW FOR CIVIL RIGHTS VIOLATIONS; VIOLATION OF THE AMERICANS WITH DISABILITIES ACT; PENDENT STATE CLAIMS; INJUNCTIVE AND DECLARATORY RELIEF<br><br>USC 42 §§1983, 1985, 1986, and 1988, |

## 1. JURISDICTION AND VENUE

1. Jurisdiction over this action arises pursuant to Sections 1331, and 1343 of Title 28 of the United States Code, as arising under the Constitution and laws of the United States, and, sections 1983, 1985, 1986, and 1988, of Title 42 of the United States Code, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; Title XIX of the Social Security Act, 42 U.S.C. § 1396a et seq. ("the Medicaid Act"); Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"); and, for declaratory and injunctive relief (authorized under 28 U.S.C. §§2201 and 2202), arises as an action seeking redress of grievances for violations of rights and privileges secured to Plaintiff Kimberly R. Olson ("Plaintiff" or "Olson") by the Constitution and Laws of the United States.  Supplemental jurisdiction (28 USC §1367(a)) is asserted over Plaintiff's pendent state law claims for relief.  Upon an Order of the Court to the Clerk to issue process in this action, and upon approval of the Court of her fee waiver request, Plaintiff requests that service be made by the US Marshal.  Times material to the events and allegations of this complaint are June 1, 2019, through and including May 19, 2021, and ongoingly.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), because the Defendants operate and perform their official duties therein and thus reside

therein for purposes of venue, and because all of the events and omissions giving rise to the claims herein occurred in the Eastern District of California. All events and circumstances described in this Complaint occurred in Siskiyou County, California, and were the result of the actions of the Defendants being taken under color of their official governmental positions, and state law. As such, pursuant to Local Rule 120(d), this action should be assigned to the Redding Division of the Eastern District of California.

## 2. THE DEFENDANTS

2. Defendant Judy Carter ("Carter") was at all times material, acting under color of law, and of her position of a Supervisor and/or Social Worker for the Adult and Children's Services Department ("ACSD") of the County of Siskiyou, State of California, which receives federal funds and administers the federally-funded In-Home Supportive Services (IHSS) program for the State of California in Siskiyou County as part of Medicaid ("Medi-Cal"). Defendant Dawn Caveye (Caveye) is a Social Worker in the same Department who was at all times material acting under color of law, and of her position thereas under the supervision of Carter. Carter and Caveye were thus employed in, and residents of, Siskiyou County, California. Defendant John does are those persons whose true names and capacities are unknown to plaintiff at this time, but who aided, abetted, conspired to undertake or conceal, or otherwise participated in the wrongful conduct of the Defendants as set forth in this Complaint. Defendants Caveye and Carter are responsible for oversight, supervision and control of the functions and programs applicable to Plaintiff Olson, as vested in the ACSD, including the Medi-Cal program, and IHSS.

3. All claims are brought against Carter, Caveye, and John Does in their individual, as well as their official capacities to the extent permitted by law, and the circumstances of each of the claims made against them At all times material, each of the Defendants herein owed a duty to Plaintiff to conform their conduct to the Constitution and laws of the State of California, and of the United States, yet they failed to do so, and inflicted harm on Plaintiff as a result.

4. The term "Defendants", when used herein, means all of the named defendants, and each of them, <u>unless otherwise specified in limiting language</u> (e.g., by naming an individual Defendant, stating "each of the Defendants named in this paragraph" or similar specifying language in a paragraph).

## 3. PLAINTIFF'S STANDING

5. Plaintiff Kimberly R. Olson is a citizen of Siskiyou County, the town of Hornbrook, of California, and of the United States, and at times material, was (and is) a "severely disabled" participant in, and recipient of, In Home Supportive Services (IHSS), a program funded and

administered by federal, state, and local government, as a benefit to those qualified residents of Siskiyou County, California.

6. Concerning Plaintiff's pendent state claims herein against Defendants, Plaintiff certifies that she timely and properly provided <u>written</u> notice of her claims to Siskiyou County in <u>full compliance</u> with all requirements of the **California Government Tort Claims Act**, <u>Government Code</u> sections 905[1], 910, and 915.

## 4. AGENCY

7. At all times material, each of the Defendants (including John Does), individually, jointly, and severally, were the agents, partners, joint venturers, aiders, abettors, employers and employees, officers, directors, supervisors, ostensible agents, principals, co-conspirators and/or partners of one another as to any specific act, plan, agreement, coordinated action, conspiracy, or joint venture as described herein, and that each intended the reasonably foreseeable outcome thereof, while acting in reckless disregard for Plaintiff's Constitutional and statutory rights, and for any reasonably foreseeable harms that could have befallen Plaintiff.

8. Each of the Defendants caused and is responsible for the herein-described wrongful, unlawful, and/or that tortious conduct resulting in injuries to Plaintiff by: personally participating in the conduct, or acting jointly, aiding, abetting, agreeing with, or conspiring with others who did so; by authorizing, ratifying, encouraging, agreeing with, acquiescing in, or setting in motion, policies, plans, or actions that led to the wrongful conduct, or, actions although lawful themselves, were in furtherance of other, unlawful, wrongful, and/or tortious conduct or goals; by failing to take action to prevent the unlawful, wrongful, and/or tortious conduct described in this Complaint; and, by failing and refusing with deliberate indifference to Plaintiff's rights to conform their conduct to that dictated by the laws of the United States, and/or the State of California. The actions of Defendants Caveye and Carter were undertaken pursuant to underground policies, customs, and practices of promoting discrimination and/or retaliation against Plaintiff; and, were undertaken with malice, to vex, annoy, and/or oppress Plaintiff.

## 5. OVERVIEW OF ALLEGATIONS.

9. This case is a Federal question, civil rights, state common law, statutory, and tort-claims action arising from various unconstitutional, unlawful, and/or wrongful actions taken by

---

[1] The date of submission of Plaintiff's initial written tort claims notice to the County was December 9, 2020. The County took no action on the claim, and it was deemed rejected on January 12, 2021. Plaintiff was served notice of the rejection by mail that same day. This action is therefore timely as to Plaintiff's pendent state claims by having been filed within six months of that notice.

Complaint for Civil Rights Violations; Pendent State Claims - 3

the named Defendants in their individual, and official capacities (as applicable), in violation of Plaintiff Olson's First, and Fourteenth Amendment rights, State law, and common laws concerning Olson's status as a Disabled Person, and an IHSS recipient and participant. The purpose of the IHSS program is "to enable the aged, blind or disabled poor to avoid institutionalization by remaining in their homes with proper supportive services." Cal. Welf. & Inst. Code § 12300(a). Persons eligible for this program must be aged (65 or over), blind, or disabled, and must also be poor under standards of the federal Supplemental Security Income or State Supplemental Payment Program. Cal. Welf. & Inst. Code §§ 12051, 12052, 14051; California Department of Social Services ("CDSS") Manual of Policies and Procedures ("Manual" or "MPP") §§ 30-755.111-.114. Most IHSS services are provided through California's Medicaid program ("Medi-Cal"). Medicaid is a joint federal and state medical assistance program for certain groups of low-income people. See 42 U.S.C. §§ 1396-1396v. California has elected to participate in the Medicaid program, and so must comply with the requirements of the federal Medicaid Act and its implementing regulations.

10. The IHSS program provides assistance with the following: (1) domestic services; (2) related services (meal preparation and clean-up, restaurant meal allowance, laundry, food and other shopping); (3) personal care services (bowel and bladder care, respiration, feeding, routine bed baths, bathing, oral hygiene and grooming, dressing, repositioning and rubbing skin including range of motion exercises, transfers, care and assistance with prosthetic devices and self-administration of medication, routine menstrual care, skin care, and ambulation); (4) travel to medical appointments; (5) yard hazard abatement; (6) protective supervision (monitoring of individuals with mental impairments to ensure their safety); (7) teaching and demonstration services; and (8) paramedical services (services that are prescribed by a doctor and require training, such as injections, physical therapy, colostomy irrigation, catheter insertion/care, suctioning, G and NG tube feeding, and ventilator and oxygen care). Cal. Welf. & Inst. Code §§ 12300(b) & (c); 14132.95(d)(1), (2); 14132.951(c). Participating States are reimbursed by the federal government for a portion of the cost of providing Medicaid benefits. See 42 U.S.C. § 1396b. The remaining funding for the IHSS program comes from the State and from counties.

11. Plaintiff Olson has been qualified as a recipient of IHSS services in Siskiyou County since 2007. That same year, after an administrative hearing challenging actions taken by the County, Plaintiff was awarded by administrative law judge Leslie Gray, an "extra" 30 minutes each week of additional "transportation time" related to laundry services due to the nature and condition of Plaintiff's disabilities, and the remote location of her residence (some 15 miles from

Complaint for Civil Rights Violations; Pendent State Claims - 4

the nearest laundry mat). In mid-2019, Plaintiff became aware that Caveye and Carter had jointly agreed and cooperated to use their respective positions and authority to <u>remove</u> the 30 minutes of vested IHSS laundry service time from her award of service hours without any notice, opportunity to be heard, or any other due process[2]. They later agreed and acted to wrongfully reduce Plaintiff's overall IHSS benefits by a significant amount, and attempted to unlawfully and wrongfully undermine and circumvent the power of the Siskiyou County "Hearings Officer" to enter into statutorily-authorized, binding contracts with Plaintiff concerning her IHSS services, by seeking to, and deliberately acting to, violate those contracts, while also intimidating and harassing Plaintiff, and the Hearings Officer, so that the Hearings Officer could no longer properly work with Plaintiff to resolve problems in services involving Caveye and/or Carter. This intimidation, which no other IHSS recipient in Siskiyou County was subjected to, was an attempt to chill Plaintiff's free speech and right to petition as provided by statute, and California administrative rules. Finally, Defendant Carter violated Olson's statutory and Constitutional rights, and right to privacy, during a December 22, 2020 reassessment of Olson's IHSS qualifications, by forcing Olson, upon the wrongful/illegal threat by Carter of termination of Olson's IHSS benefits when Olson objected, and refused to grant permission for, allowance of a third party associate of Carter's to listen in on the telephone IHSS reassement interview with Olson for "training purposes". Moreover, Carter failed and refused to consider significant and substantial written documentation of Plaintiff's circumstances and needs for IHSS services submitted in conjunction with the phone interview, which consideration is required by law and the MPP, and which failure by Carter resulted in Olson not being awarded the proper amount of IHSS service hours in violation of statutory mandates, and the provisions of the MPP. Meanwhile, other clients of Carter were not subject to violations of privacy, failure by Carter to consider all substantial evidence at their IHSS reevaluations, or violations of the MPP.

12. Furthermore, the agreements, plans, and actions of these Defendants were predicated upon their resentment, animosity, malice, and desire for retaliation towards, and to commit oppression of, Plaintiff for the exercise of her petitioning rights to government agencies concerning her IHSS service hours and other program benefits. Caveye stated to Plaintiff that her hours would be reduced because Plaintiff Olson was "not disabled enough" to deserve the

---

[2] Indeed, there is no way they could do so even if they "gave notice" since that agency decision became final long ago, and is *res judicata* between Olson and the County, and they are collaterally estopped from attempting to force relitigation of the issues involved. Their attempts to do so on their own authority, rather than respect the finality of the 2007 Decision, is another violation of due process.

Complaint for Civil Rights Violations; Pendent State Claims - 5

IHSS service hours she had been receiving, and that Caveye "had clients that are much more disabled...that get fewer hours". Caveye later stated in writing that she sought to reduce Plaintiff's IHSS hours because Olson, via administrative review, had sought, and obtained, a "conditional withdrawal" overturning some previous negative actions Caveye had taken against Olson, while Carter agreed with, upheld, assisted, and failed to prevent Caveye in doing so. Both Defendants knew that Plaintiff was a vulnerable, disabled person without resources to fight them, that she would be harmed by their acts of reducing her services, and that such reductions would cause her a great deal of emotional pain and distress - which would further hinder Olson's ability to seek corrective action against Caveye and Carter. To justify any impairment of First Amendment rights, there must be present a compelling governmental interest, but no such compelling interest is present so far as the vindictive, malicious, and oppressive acts of Caveye and Carter against Olson. (*Huntley v. Public Util. Com.* (1968) 69 Cal. 2d 67, 74.)

13. California's In-Home Supportive Services ("IHSS") program presently provides crucial in-home assistance with certain basic tasks of daily living – for example, bathing, dressing, meal preparation and clean up, eating, bowel and bladder care, and taking necessary medications – so that elderly individuals and persons with disabilities can avoid unnecessary and costly institutionalization. IHSS recipients qualify for these services because it has been determined that they cannot safely remain in their homes without them, and so would be at risk of placement in an institutional facility and much greater public cost.

14. The wrongful agreements and acts at issue contravene state and federal laws in a number of ways. Initially, Defendants' actions violate state law, as well as the Americans with Disabilities Act of 1990, 42 U.S.C. § 12312 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), by placing Olson, as an IHSS recipient at imminent risk of unnecessary and unwanted out-of-home and out-of-community placement, including in institutions such as nursing homes, and by discriminating on the basis of the type of disability(s) that Olson has, and/or is perceived to have by these Defendants.

15. The actions of these Defendants also violates the requirements of Title XIX of the Social Security Act, 42 U.S.C. § 1396a ("the Medicaid Act"): that States provide (1) comparable Medicaid services to individuals with similar needs; (2) services that are sufficient in amount, duration, and scope to reasonably achieve their purposes; and, (3) services according to reasonable standards. Defendants' actions further violates the requirement imposed by the Medicaid Maintenance of Effort Clause of the American Recovery and Reinvestment Act ("ARRA") by restricting IHSS eligibility standards as applied to Plaintiff Olson, and

discriminating against her as an individual "class of one". Finally, Defendants' failure to provide adequate notice and opportunity for hearing prior to depriving Plaintiff of critical IHSS services, and due process during reevaluations made by in-person and/or phone interviews, violates the federal constitutional guarantee of procedural due process and the Medicaid Act's notice and hearing provisions.

16. Counties, under the direction of CDSS, determine recipients' eligibility for IHSS services and the number of weekly and monthly hours authorized for any services to them based on statewide statutes and regulations. Cal. Welf. & Inst. Code §§ 12300(g), 14132.95(f), 14132.951(b) & (e). Individuals are eligible for IHSS services when they are "unable to perform the services themselves and . . . cannot safely remain in their homes. . . unless these services are provided." Cal. Welf. & Inst. Code § 12300(a); MPP §§ 30-761.13, 30-763.112. The assessment of eligibility for IHSS services begins with county social workers "collecting and evaluating information . . . [which] includes but is not limited to, all of the following: (A) The recipient's living environment. (B) Alternative resources. (C) The recipient's functional abilities." Cal. Welf. & Inst. Code § 12309(b). Social workers assess recipients' level of need through a variety of methods, including observing the recipient and the recipient's living environment, asking the client questions, and reviewing documentation, including diagnosis and functional indications from the recipient's physician. MPP §30-761.26. Based on this information, social workers determine the tasks that recipients are unable to safely perform by themselves, and the minimum number of hours necessary for an IHSS provider to assist or to undertake those tasks for them. MPP §30-763.2. When a new recipient begins receiving IHSS services, the recipient receives a Notice of Action ("NOA") setting forth in writing the hours authorized for each service on a weekly or monthly basis. Cal.Welf.& Inst.Code §12300.2; MPP §30-763.81. Recipients are reassessed for eligibility for IHSS services on an annual basis through in-person social worker reassessment. Counties are also required to reassess recipients any time the recipient notifies the county of a need to adjust the supportive services hours authorized, or when there are other indications or expectations of a change in circumstances affecting the recipient's need for supportive services. Cal. Welf. & Inst. Code § 12301.1(d).

17. Recipients must be notified of changes in hours authorized - via any reassessment or otherwise - in a NOA. Cal.Welf.&Inst. Code §12300.2; MPP §§30-761.212, 30-763.81. CDSS has established "statewide hourly task guidelines and instructions to provide counties with a standard tool for consistently and accurately assessing service needs and authorizing service

hours to meet those needs." Cal. Welf. & Inst. Code § 12301.2(a)(1). The applicable regulations specify the standard time ranges required for each IHSS task and set forth criteria that are relevant to when an individual's needs would fall outside this range. Cal. Welf. & Inst. Code § 12301.2(a)(2); MPP § 30-757. Counties are required to deviate from the hourly task guideline amount if a recipient's needs fall outside this standard range, and in such cases counties must document the need for that service level. Cal. Welf. & Inst. Code § 12301.2(c). There are multiple reasons why a recipient's need for and authorization for IHSS hours might differ from the hourly task guidelines, as set forth in the Manual. MPP § 30-757.1. The maximum amount of IHSS services that a recipient is allowed to receive is 283 hours per month if the person is "severely disabled" (as is Plaintiff Olson), or 195 hours per month if the person is not severely disabled. Welf. & Inst. Code §§ 12303.4(a) & (b), 14132.95(g), 14132.951(b). Recipients of IHSS services do not waive any of their rights to privacy as a condition of participation.

### 6. CIVL CONSPRACY OF THE DEFENDANTS

18. Although civil conspiracy is not a stand-alone tort, or cause of action, it does exist as a "rider" to other causes of action, and makes each of the tortfeasors liable for the acts of every other, as well as for the ultimate goals of the conspiracy - which in this case was acting against Olson and her rights and interests as described herein, in part to thwart, and/or retaliate for, Olson's exercise (and/or attempted exercise) of Constitutional and statutory rights.

19. Beginning on June 1, 2019, and continuing through and including through and including May 19, 2021, and ongoingly, the Defendants wrongfully, improperly, and/or illegally enlisted each other's agreements and aid to intentionally promote, accomplish, assist with, legitimize, aid in, and/or ratify each of the wrongful and oppressive acts against Plaintiff as set forth throughout this Complaint with full knowledge of the wrongfulness, and/or unlawfulness of these goals, plans, acts, and methodologies. Additionally, the motivation of Defendants Caveye and Carter to engage in these wrongs against Plaintiff were Plaintiff's complaints to the County of civil rights violations by them, and Plaintiff's use of administrative complaints, proceedings, and settlement "conditional withdrawals" as provided in the IHSS program, concerning Caveye and Carter, and they utilized their positions and authority as means to frustrate the lawful goals of, and to retaliate against, Plaintiff for her exercise of Constitutional and/or statutory rights.

### *****FIRST CLAIM FOR RELIEF (Federal Counts)*****

In making out her "Counts" in the First Claim for Relief, Plaintiff realleges and incorporates herein by reference each and every allegation and paragraph set forth previously.

## Count I:  DEPRIVATION OF RIGHTS TO FREE SPEECH, PETITIONING, DUE PROCESS; EQUAL PROTECTION

20. In conspiring and acting to harm Plaintiff as a disabled person and an IHSS recipient as described in the foregoing paragraphs; in seeking to circumvent a long-final Decision of their own ALJ;  to retaliate for, and chill Plaintiff's protected speech submitted in her administrative filings, forms, petitions, "conditional withdrawals", and communications with government agents; and, for engaging in protected conduct, all without any notice or opportunity to be heard (or any other due process), the Defendants violated Plaintiff's rights to free speech; right to petition for redress of grievances; the due process of law[3], and the equal protection of the laws.

## Count II:  CONSPIRACY FOR INTERFERENCE WITH RIGHTS: (42 USC 1985(3))

21. The Defendants affirmatively agreed and acted on multiple occasions to deprive Plaintiff of her rights to free speech, petitioning, due process and the equal protection of the laws by using their positions as Social Workers of Siskiyou County to illegally and unilaterally remove ALJ-awarded IHSS hours from Plaintiff Olson in a manner that violated the MPP and federal laws, and to do so without prior notice to her or opportunity to be heard as to their actions - instead undertaking such actions without any due process; and, in some instances, in violation of *res judicata* and collateral estoppel principles.  Further, these same Defendants acted to deny and interfere with Plaintiff's First Amendment rights to petition for redress of grievances by interfering with, and circumventing, lawful contracts and "conditional withdrawals" entered into by Olson via administrative state procedures and the MPP, and by circumventing binding and final Decisions by an ALJ which were in Olson's favor.  Each of the Defendants knew of, ratified, aided, abetted, ratified, and agreed with those acts, and their collective intent and agreement was to deny Plaintiff her constitutional and statutory rights to free speech, petitioning, notice, due process, and the equal protection of the laws, and to maliciously retaliate against Olson for exercise of her rights.

22. The Defendants' agreeing to, encouraging, aiding, abetting, and ultimately performing, the wrongful actions as complained of herein, was a concerted effort to deny Olson her Constitutional and statutory rights, and was motivated by malice, as well as a desire to retaliate against Plaintiff for the exercise of her Constitutional and statutory rights.  The actions against Plaintiff were a united effort with the ultimate goals being to: interfere with; intimidate

---

[3] See also *Goldberg v. Kelly*, 397 U.S. 254 (1970).

Complaint for Civil Rights Violations; Pendent State Claims - 9

into abandoning; impede; and, attempt to prevent Plaintiff from exercising, her rights, so violating 42 USC §1985.

### Count III: DEPRIVATION OF RIGHTS TO EQUAL PROTECTION OF THE LAWS

23. The Defendants, by improperly and wrongfully agreeing and acting to disregard, and acting to actively thwart, the laws attendant to Plaintiff's status as a disabled person, Medicare participant, and IHSS client of the State of California and Siskiyou County, while not treating other of their clients in the same manner, and without any notice to Plaintiff of their plans, decisions, and actions, Defendants on each such occasion deprived Plaintiff of the equal protection of the laws, and Plaintiff's right to the due process of law.

### Count IV: VIOLATION OF 42 USC §1986.

24. The acts of the Defendants as complained of herein demonstrate Defendants, acting under color of law and in concert with one another, and by way of a conspiracy among them, have caused Plaintiff to be denied her rights to speak freely and to petition without retaliation, denied the equal protection of the laws, and to be deprived of equal privileges and immunities under the laws, on account of Plaintiff's exercise of protected conduct, and/or on the basis of her disability. The Defendants had supervisory power over Plaintiff and her IHSS benefits, had knowledge of (and participated in) the conspiracy to violate Plaintiffs' civil rights and of the violations committed, and had power to prevent these wrongs, but neglected and/or refused to do so in violation of 42 U.S.C. §1986.

### Count V: VIOLATION OF MEDICAID ACT

25. Under federal Medicaid requirements, recipients and applicants for Medicaid services have rights to written notice and a pre-termination fair hearing if their benefits are reduced, suspended, or terminated. (42 U.S.C. §1396a(a)(3).) This notice must contain the following:

(a) A statement of what action the State . . . intends to take;

(b) The reasons for the intended action;

(c) The specific regulations that support, or the change in Federal or State law that requires, the action;

(d) An explanation of–

    (1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or

    (2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

Complaint for Civil Rights Violations; Pendent State Claims - 10

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested. (42 C.F.R. §431.210.)

26. Pursuant to the Medicaid Act, California has established procedures to provide fair hearings to any Medi-Cal beneficiary whose services are denied, reduced, or terminated. (Cal. Code Regs. tit. 22 §51014.1(a).) In reducing or terminating services as set forth above, without notice or hearing, and/or while circumventing administrative resolutions concerning her IHSS benefits secured by Plaintiff, Defendants have deprived Plaintiff of her opportunity to notice and a fair pre-termination hearing in violation of 42 U.S.C. §1396a(a)(3). Defendants' actions under color of law deprived Plaintiff of rights, privileges or immunities secured to her by the Constitution of the United States.

## Count V: VIOLATION OF AMERICANS WITH DISABILITIES ACT

27. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132. In enacting the ADA, Congress found that "[i]ndividuals with disabilities continually encounter various forms of discrimination, including . . . segregation . . . ." (42 U.S.C. §12101(a)(5).) Regulations implementing Title II of the ADA provide: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." (28 C.F.R. § 35.130(d).)

28. Defendants Caveye and Carter are Social Workers and supervisors of the Adult and Children's Services Department of Siskiyou County, respectively, which is a public entity within the meaning of Title II of the ADA. Regulations implementing Title II of the ADA provide: "A public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. . . ." (28 C.F.R. § 35.130(b)(3).)

29. The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA. In doing so, the Supreme Court interpreted the ADA's "integration mandate" as requiring persons with disabilities to be served in the community when:

(1) the state determines that community-based treatment is appropriate; (2) the individual does not oppose community placement; and, (3) community placement can be reasonably accommodated. *Id.* 527 U.S. at 607.

30. The ADA prohibits discrimination based on type of disability - and also including perceived "severity" of disability as demonstrated by these Defendants against Plaintiff Olson. The ADA's regulations further provide that "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. 35.130(b)(8).

31. Pursuant to the ADA, public entities are required to provide meaningful access to their programs, services and activities, and provide any accommodations or modifications necessary for people with disabilities to access those services (such as, for example, accommodation for reasonable extra "laundry transportation time" if they live in remote areas). Plaintiff is a "qualified individual with a disability" within the meaning of the ADA in she (1) has physical impairments that substantially limit one or more major life activities; and meet the essential eligibility requirements in that she (2) is capable of living independently in her own home and/or in the most integrated community setting possible, with assistance; and (3) meets the Medi-Cal income eligibility requirements.

32. Defendants' actions have placed Plaintiff at imminent risk of unnecessary confinement in institutions, including nursing facilities, or other out-of home placements that are not the most integrated community placements possible, in violation of the ADA's integration mandate. Defendants discriminate against Plaintiff in ways that include, but are not limited to, failing to provide reasonable modifications to programs and services. Defendants have utilized eligibility criteria and methods of administration that subject Plaintiff Olson to discrimination on the basis of disability, in violation of 28 C.F.R. §35.130(b)(3) &(8), and acted otherwise to deny her meaningful access to their programs, services and activities.

33. Defendants' actions violate Title II of the ADA. Pursuant to 42 U.S.C. §12133, Plaintiff is entitled to declaratory and injunctive relief as well as any reasonable attorneys' fees and costs incurred in bringing this action.

**Count VI: VIOLATION OF §504 OF THE REHABILITATION ACT 29 USC §794 et seq.**

34. Section 504 of the Rehabilitation Act of 1973, on which the ADA is modeled, sets forth similar protections against discrimination by recipients of federal funds, such as Defendants

herein. (29 U.S.C. §§794-794a.) These protections include the prohibition against unnecessary segregation. Regulations implementing Section 504 require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. (28 C.F.R. § 41.51(d).)

35. Section 504 prohibits discrimination based on type of disability. Section 504's regulations prohibit government agencies that are recipients of federal financial assistance from utiliz[ing] criteria or methods of administration . . . (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons. (28 C.F.R. §41.51(b)(3)(i); 45 C.F.R. §84.4(b)(4).) Plaintiff is a "qualified individual with a disability" within the meaning of Section 504 in that she (1) has physical impairments that substantially limits one or more major life activities; and meet the essential eligibility requirements in that they (2) are capable of living independently in their own homes and/or in the most integrated community setting possible, with assistance; and (3) meet the Medi-Cal income eligibility requirements. Defendants' actions have placed Plaintiff at risk of unnecessary confinement in institutions, including nursing facilities, or other out-of-home placements that are not the most integrated community placements possible, in violation of Section 504's integration mandate.

36. Defendants discriminate against Plaintiff in ways that include, but are not limited to, failing to provide reasonable modifications to programs and services. Defendants have also utilized eligibility criteria and methods of administration that subject Plaintiff to discrimination on the basis of disability in violation of 28 C.F.R. §41.51(b)(3)(i) and 45 C.F.R. §84.4(b)(4), and otherwise denied meaningful access to their programs, services and/or activities. Defendants' actions thereby violate Section 504.

### Count VII: VIOLATION OF MEDICAID COMPARABILITY REQUIREMENT

37. Under federal Medicaid requirements, states must provide comparable benefits, i.e., benefits that are equal in "amount, duration and scope," to all categorically needy Medicaid beneficiaries. 42 U.S.C. §1396a (a)(10)(B)(ii); 42 C.F.R. §440.240(a), (b)(1). Categorically needy Medicaid beneficiaries are beneficiaries who, in most cases, receive cash public assistance to meet basic needs. The Medicaid Act also requires states to provide comparable benefits to all medically needy Medicaid beneficiaries. (42 U.S.C. §1396a (a)(10)(B)(ii); 42 C.F.R. §§440.240 (b)(1).) Medically needy Medicaid beneficiaries are beneficiaries who do not receive cash public

assistance because they have income or resources in excess of the requirements for receipt of such assistance, but who nevertheless meet categorical requirements for such assistance, e.g., they are over age 65, blind, or disabled - as is Plaintiff.

38. States may provide benefits to the medically needy that are less in amount, duration and scope than benefits to the categorically needy, but California has not elected to do so. Therefore (with certain exceptions for some groups not relevant here), California must provide benefits under its Medicaid program that are equal in amount, duration and scope to all eligible beneficiaries. The only permissible basis for distinguishing among such beneficiaries is differing levels of need. Instead, Defendants will provide IHSS services to some Medicaid recipients at certain terms and conditions, while denying the same services to Plaintiff as an IHSS recipient who has comparable needs, based on the purely subjective opinions and/or vindictive motives of Caveye and Carter - and that is not a rational measure of need.

39. Pursuant to their subjective opinions; policy, custom, and practice of discrimination; and, hostility towards Plaintiff Olson, Defendants will provide domestic and related IHSS services to some Medicaid recipients, while denying the same services to Plaintiff as an IHSS recipient who has comparable needs, based on criteria that are not a rational measure of need. Therefore, the acts of the Defendants violates Medicaid's comparability requirement, 42 U.S.C. §1396a(a)(10)(B)(i). Defendants' actions also thus deprive Plaintiff of rights, privileges or immunities secured to her by the Constitution and laws of the United States.

### Count VIII: MEDICAID REASONABLE STANDARDS REQUIREMENT

40. Federal Medicaid law requires participating states to establish reasonable standards, consistent with the objectives of the Medicaid Act, for determining the extent of covered services. See 42 U.S.C. §1396a(a)(17). Pursuant to their whimsical and subjective criteria and their desire to retaliate and oppress Plaintiff Olson, Defendants will cover IHSS services for some Medicaid recipients, while denying the same services to Plaintiff when she has comparable needs, and have (and will continue to) utilize customs, policies, procedures, and/or practices against Plaintiff that do not provide a fair or reasonable measure of need for services. These acts of the Defendants towards Plaintiff are therefore inconsistent and in conflict with the reasonable standards requirements of the federal Medicaid Act, 42 U.S.C. §396a(a)(17), and interpretive federal guidelines.

### ***SECOND CLAIM FOR RELIEF - (Pendent State Claims)***

In making out her "Counts" in the Second Claim for Relief, Plaintiff realleges and incorporates herein by reference each and every allegation and paragraph set forth previously.

Complaint for Civil Rights Violations; Pendent State Claims - 14

### 1. Willful and/or Negligent Infliction of Emotional Distress

41. Plaintiff alleges that the Defendants, in performing the acts complained of herein, did so while acting negligently, recklessly, wantonly, and/or willfully to retaliate against, vex, harass, oppress, and annoy Plaintiff, and/or to subject her to lasting fear, anger, upset, anxiety, humiliation, embarrassment, outrage, financial loss, and extreme ongoing emotional and psychological pain and distress, all the while acting with wanton indifference and reckless disregard for Plaintiff's rights, and any possible harm that may have befallen Plaintiff as a result. Defendants' above-described conduct constituted a breach of Defendants' duty of care to ensure that Defendants did not cause unnecessary or unjustified harm to Plaintiff. It was reasonably foreseeable to the Defendants that a breach of that duty would cause emotional harm to Plaintiff

### 2. Violations of Civil Code §52.1

42. Defendants have used threats of termination and/or reduction of Plaintiff's IHSS benefits, and other forms of intimidation to interfere with Plaintiffs' rights to privacy, due process, and equal protection of the laws, as well as the exercise by Plaintiff of rights secured by the Constitution and laws of the United States, and the State of California

43. Plaintiff is entitled to an injunction pursuant to California Civil Code §52.1. Plaintiff is also entitled to damages as provided by Civil Code §§52 and 52.1.

### 3. Violations of Covenant of Good Faith and Fair Dealing

44. The agreement and actions of Defendants to willfully and maliciously violate the terms and conditions of contracts entered into in good faith by Plaintiff and the Adult and Children's Services Department, all of which were binding upon them, violated the implied covenant of good faith and fair dealing, and caused economic and other damages to Plaintiff, and denied her the benefits of the contracts.

### Actions of the Defendants Resulted in Damages to Plaintiff

42. Plaintiff alleges that the actions by all of the Defendants as set forth in her First and Second Claims for Relief, and as incorporating the factual allegations against each Defendant as specified in this Complaint, caused general, special, and pecuniary damages to Plaintiff, in an amount to be proven at trial, but in no event less than $150,000.00 per "count".

### Demand for Punitive/Exemplary Damages

43. Plaintiff alleges that the actions of each of the Defendants herein as set forth in her First and Second Claims for Relief, and as incorporating the factual allegations as specified in this Complaint, were reckless, willful, wanton, and oppressive, while being undertaken with malice, and/or willful disregard for Plaintiff's Constitutional and statutory rights, as well as any

harm that may have befallen Plaintiff or her interests as a result, and so Plaintiff reserves her right to seek, and hereby demands, punitive and exemplary damages herein as to each and all of these Defendants in Counts I through VIII of her First Claim for Relief, and additionally as to Count 1 of her Second Claim for Relief, in the amount of $100,000.00 for each "count" set forth.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff now prays for judgment against Defendants as specified hereinabove, as well as:

1. Assume jurisdiction over this action and maintain continuing jurisdiction until Defendants are in full compliance with every order of this Court;

2. Declare that the policies, customs, practices, acts and omissions of the Defendants, as set forth above, violate the American with Disabilities Act and Section 504 of the Rehabilitation Act;

2. Declare that Defendants Caveye and Carter's policies, practices, acts and omissions towards Plaintiff as set forth above violate the Medicaid Act (comparability, sufficiency, notice, reasonable fair hearing, reasonable standards, and ARRA provisions), the Due Process Clause of the United States Constitution, and 42 U.S.C. § 1983;

3. Grant a temporary restraining order, preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from continuing to act in the wrongful manners set forth above;

4. Grant a temporary restraining order, preliminary and permanent injunction enjoining Defendants, their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from acting to infringe Plaintiff's rights, and prohibiting any retaliation by Defendants for Plaintiff's exercise of her rights;

5. For general, special, economic, and punitive/exemplary damages as set forth, and as determined at trial, and for statutory damages per Civil Code §§52 and 52.1;

3. Award Plaintiff the costs of this action and any reasonable attorneys' fees incurred pursuant to 20 U.S.C. §794a; 42 U.S.C. §§1988, 12133, 12205; and as otherwise may be allowed by law.; and,

4. For such other and further relief as the court may deem just, equitable, and proper.

Respectfully submitted this __19th__ day of May, 2021

*Kimberly R. Olson*, Plaintiff Pro Se